OPINION *Page 2 
{¶ 1} Defendant-appellant Willie Oliver, Jr. appeals from his conviction in the Mahoning County Common Pleas Court of receiving stolen property, a violation of R.C. 2913.51(A)(4), a fourth degree felony, and failing to comply with the order or signal of a police officer, a violation of R.C. 2921.331(B)(C)(1)(5)(a)(ii), a third degree felony. Multiple issues are raised in this appeal. The first issue is whether the trial court erred when it sentenced Oliver to consecutive sentences. The second issue is whether trial counsel was ineffective for failing to request a more specific bill of particulars. The third issue is whether the trial court abused its discretion when it allowed the deposition of state's witness, Alicia Adams, to be played in lieu of her live testimony. The fourth issue is whether the verdict was against the manifest weight of the evidence. The fifth issue is whether the trial court erred when it denied the Crim. R. 29 motion for acquittal. The sixth issue is whether the trial court's denial of the joinder, new trial, and recusal motions were in error. The seventh issue is whether Oliver's right to confrontation was violated. The last issue is whether the prosecutor committed prosecutorial misconduct when it did not turn over still pictures. For the reasons expressed below, the conviction is affirmed, however, the sentence is vacated and the cause is remanded to the trial court for resentencing with instructions to consider all relevant sentencing statutory factors, specifically R.C. 2921.331(C)(5)(b).
 STATEMENT OF FACTS AND CASE {¶ 2} Sometime after 7:30 p.m. on May 7, 2006, David Townsend's 1990 maroon Pontiac Bonneville with license plate number DRU6603 was stolen from the driveway abutting his property on Selma in Youngstown, Ohio. (Tr. 163, 165, 370). The next morning when he noticed it was gone, he called the Youngstown Police Department and reported the car stolen.
 {¶ 3} During the early morning hours of May 8, 2006, Boardman Police were called to the BP on the corner of South Avenue and Rt. 224. (Tr. 184). The clerk at the BP called the police about two suspects, a male and female, that had previously shoplifted at that store. (Tr. 184, 250). The clerk indicated that the two suspects were *Page 3 
driving a 1990 maroon Pontiac with license plate number DRU6603. (Tr. 185-186). Those two suspects were later identified as Willie Oliver and Alicia Adams. (Tr. 263).
 {¶ 4} The officer did not see the suspects or the car when he checked the BP, however, he did notice them leaving Doral Drive. He proceeded to follow them to I-680. When the vehicle entered the I-680 on ramp, the officer activated his overhead lights. (Tr. 187). At that point the Bonneville accelerated, left the road a couple of times, fishtailed and almost crashed. (Tr. 188). The officer testified that he ended the pursuit because of the danger to the driver and passenger and any other vehicles on the road. (Tr. 189, 210).
 {¶ 5} On May 9, 2006, Officer David Wilson of the Youngstown Police Department, who had taken the stolen car report from Townsend the previous day, attempted to initiate a stop with a maroon Pontiac Bonneville, license plate number DRU6603. The car did not stop and Officer Wilson pursued the vehicle through the north side of Youngstown. Eventually the car jumped a curb and stopped. The driver got out and ran, jumping fences in people's backyards. Officer Wilson stated the suspect was wearing sweat pants and a white shirt with purple stripes. He and backup were not able to catch the suspect at that point, but they thought they knew the house where he was hiding. Officer Wilson proceeded to write a report and inventory the vehicle. He then saw the suspect, wearing the same clothes, emerge from the fence line, he told the suspect to stop, but instead the suspect ran. The police cornered and apprehended the suspect. Identification on the suspect identified him as Oliver.
 {¶ 6} As a result of the above, Oliver was charged with two counts of failing to comply with an order and one count of receiving stolen property. A jury convicted him of failing to comply with the order in Boardman and also receiving stolen property. However, it found him not guilty of the failing to comply with an order of a police officer for the incident that happened in Youngstown. Oliver was sentenced to 12 months on the receiving stolen property conviction and four years on the failing to comply with an order of a police officer conviction; the sentences were ordered to be served consecutively. *Page 4 
 {¶ 7} Oliver timely appeals. Counsel for Oliver filed a brief containing five assignments of error. Oliver then requested that he be able to file his own brief. This court allowed him to do so and in it he raised four additional assignments of error.
 FIRST ASSIGNMENT OF ERROR {¶ 8} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT IMPOSED CONSECUTIVE SENTENCES UPON THE APPELLANT."
 {¶ 9} This first assignment of error raises issue with the trial court's order of consecutive sentences. Oliver argues that the trial court did not make the appropriate findings and provide reasons supporting those findings in accordance with R.C. 2929.14(E)(4). He also asserts that the trial court failed to consider the factors enumerated in R.C. 2921.331 (C)(5)(b)(1)-(ix) (the failure to comply statute).
 {¶ 10} Recently, the Ohio Supreme Court attempted to resolve the conflict among the appellate districts as to what the standard of review is for reviewing felony sentences. State v. Kalish, Slip Opinion No. 2008-Ohio-4912. However, in that decision, the Supreme Court rendered a plurality opinion (Justices O'Connor, Moyer and O'Donnell), a concurring in judgment only opinion (Judge Willamowski, of the Third District sitting by assignment), and a dissenting opinion (Justices Lanzinger, Pfeifer and Stratton).
 {¶ 11} The plurality concluded that in reviewing felony sentences, the appellate courts must apply a two-step approach. Id. at ¶ 26 (O'Connor, J., plurality opinion). The first step requires appellate courts to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." Id. (O'Connor, J., plurality opinion). In examining "all applicable rules and statutes," the sentencing court must consider R.C. 2929.11 and R.C. 2929.12. Id. at ¶ 13-14 (O'Connor, J., plurality opinion). If the sentence is clearly and convincingly not contrary to law, the sentencing court's exercise of discretion "in selecting a sentence within the permissible statutory range is subject to review for any abuse of discretion." Id. at ¶ 17 (O'Connor, J., plurality opinion). Thus, an abuse of discretion is used to determine whether the sentence satisfies R.C. 2929.11 and R.C. 2929.12. Id. at ¶ 17 (O'Connor, J., plurality opinion). *Page 5 
 {¶ 12} The concurring in judgment only opinion did not entirely agree with the plurality's "overly broad" two-step approach to reviewing felony sentences. Id. at ¶ 42 (Willamowski, J., concurring in judgment only). It agreed with the plurality that the sentence should be reviewed under the clearly and convincingly contrary to law standard to determine if the sentencing court complied with all applicable rules and statutes, which would include R.C. 2929.11 and R.C. 2929.12. Id. at ¶ 42 (Willamowski, J., concurring in judgment only). However, according to it, the clearly and convincingly contrary to law standard is only applicable to R.C. 2929.12 in determining whether the sentencing court "bothered to consider the factors" in R.C. 2929.12(B)-(D). Id. (Willamowski, J., concurring in judgment only). If the sentencing court did consider those factors, then an appellate court would review the application of those factors under an abuse of discretion standard of review. Id. (Willamowski, J., concurring in judgment only). This differs from the plurality opinion in that instead of requiring the entire sentence to be reviewed for an abuse of discretion, only the application of R.C. 2929.12(B)-(D) is reviewed under the abuse of discretion standard.
 {¶ 13} The dissent concluded that post-Foster the standard of felony sentencing review remains unchanged and that only a clearly and convincingly contrary to law standard of review is employed. Id. at ¶ 43 (Lanzinger, J., dissenting).
 {¶ 14} Considering the above holdings and reasons, in Kalish, what we glean from that opinion is that appellate courts should review felony sentences under both the clearly and convincingly contrary to law standard and the abuse of discretion standard of review. As such, that is the standard we will now use.
 {¶ 15} Oliver's first argument alleging that the trial court, in imposing consecutive sentences, failed to make findings and reasons supporting those findings pursuant to R.C. 2929.14(E)(4). As this court has continually explained, the Ohio Supreme Court in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 83 found this portion of R.C. 2929.14 to be unconstitutional. Id. at ¶ 15; State v. Hawkins, 7th Dist. No. 07JE14, 2008-Ohio-1529, ¶ 12; State v. Christian, 7th Dist. No. 07JE9, 2007-Ohio-7205, ¶ 35. Thus, trial courts are no longer required to make findings and provide reasons in accordance with that section. Consequently, Oliver's argument fails. *Page 6 
 {¶ 16} His second argument concerns R.C. 2921.331(C)(5)(b)(i)-(ix) and the trial court's alleged failure to look at the factors in that section before sentencing him to consecutive terms. He contends that the trial court could not sentence him to consecutive sentences without examining the (C)(5)(b) factors. His contention is not entirely correct.
 {¶ 17} R.C. 2921.331(D) unequivocally states that his sentence for failing to comply with an order of a police officer, violation of R.C. 2921.331 (C)(5)(a)(ii), was required to be ordered consecutive to any other prison term imposed upon him. The factors in R.C. 2921.331(C)(5)(b) do not affect that mandate. Instead, they are used to determine the "seriousness" of an offender's conduct along with the factors set forth in R.C. 2929.12 and 2929.13. R.C. 2921.331(C)(5)(b). In this instance where consecutive sentences are mandatory, the seriousness factors are used to determine whether the offender receives the minimum sentence, maximum sentence or some sentence in between for the failure to comply offense. Thus, his insinuation that those factors are somehow necessary for a finding of consecutive sentences is incorrect.
 {¶ 18} That said, the record in this case does not show that the trial court considered the R.C. 2921.331(C)(5)(b) factors before imposing the sentence. R.C. 2921.331(C)(5)(b) lists nine factors to be used to consider the seriousness of an offender's conduct. They are:
 {¶ 19} "(i) The duration of the pursuit;
 {¶ 20} "(ii) The distance of the pursuit;
 {¶ 21} "(iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;
 {¶ 22} "(iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
 {¶ 23} "(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
 {¶ 24} "(vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;
 {¶ 25} "(vii) Whether the offender committed a moving violation during the pursuit; *Page 7 
 {¶ 26} "(viii) The number of moving violations the offender committed during the pursuit;
 {¶ 27} "(ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense."
 {¶ 28} These factors do not need to be expressly mentioned nor do specific findings as to the factors need to be made, rather, all that is needed to be shown is that the trial court considered the factors.State v. Jones, 8th Dist. No. 89499, 2008-Ohio-802, ¶ 18; State v.Anderson, 8th Dist. No. 83285, 2004-Ohio-2858, ¶ 22 (holding "[t]he court is not required by statute or otherwise to state its consideration of statutory factors on the record nor to make any specific finding in relation thereto"); State v. Sheets, 4th Dist. No. 02CA15, 2002-Ohio-6423, ¶ 26-27.
 {¶ 29} In Jones, the trial court never expressly listed the factors by name. However, at the sentencing hearing, it did consider that Jones was driving 70 mph in a residential area, he ran several stoplights, and the police were driving approximately 90 mph in an active school zone while pursuing him. Consequently, the appellate court determined that this was sufficient to show that the trial court considered the seriousness factors in R.C. 2921.331(C)(5)(b). Jones, 8th Dist. No. 89499,2008-Ohio-802, ¶ 17.
 {¶ 30} In Anderson, Anderson entered a no contest plea, the state presented facts, the trial court found him guilty and then sentenced him. On appeal, Anderson argued that the trial court failed to reference the factors in R.C. 2921.331 (C)(5)(b). The appellate court indicated that since the trial court found Anderson guilty of the charges based upon the facts presented by the state, it necessarily considered the factors that fell within section (C)(5)(b)(i)-(ix). Thus, it affirmed the sentence because it held those facts indicated that the trial court considered the factors. Anderson, 8th Dist. No. 83285, 2004-Ohio-2858, ¶ 21-22.
 {¶ 31} In Sheets, at sentencing, Sheets argued the traditional sentencing factors but also argued the seriousness factor in R.C. 2921.331(C)(5)(b). The trial court in its entry stated that it had considered "R.C. 2929.331" seriousness factors as pointed out by Sheets. The appellate court held that while that was an incorrect recitation of the statute number, from the trial court's entry and the record, it was clear *Page 8 
that the trial court was referencing the seriousness factors in R.C. 2921.331. Sheets, 4th Dist. No. 02CA15, 2002-Ohio-6423, ¶ 26-27.
 {¶ 32} Our case is similar to the above cases in that here, like above, the trial court does not expressly state that it considered the factors in R.C. 2921.331(C)(5)(b). However, our case is also distinguishable. The trial court does state that it considered R.C. 2929.11 and R.C. 2929.12, however, it makes no mention of R.C. 2921.331
and its factors. Furthermore, there are no facts discussed at the sentencing hearing. Thus, without any facts and a clear indication that it considered the factors espoused in R.C. 2921.331(C)(5)(b), the trial court erred when it sentenced Oliver.
 {¶ 33} The state contends that Oliver waived the above by not objecting to the sentence and the failure to consider the factors in R.C. 2921.331(C)(5)(b) prior to sentencing. It is true that he did not object. However, he would not have been aware that the trial court did not consider the factors until after the sentence was rendered. Thus, it does not appear that he waived this argument.
 {¶ 34} Therefore, since the record does not indicate that the trial court considered all relevant statutory sections, the sentence is clearly and convincingly contrary to law. This assignment of error has merit.
 SECOND ASSIGNMENT OF ERROR {¶ 35} "THE STATE'S BILL OF PARTICULARS WAS INADEQUATE. THE DEFENSE COUNSEL WAS INEFFECTIVE NOT TO REQUEST A MORE SPECIFIC ONE."
 {¶ 36} Oliver's second assignment of error concerns the bill of particulars. During discovery, Oliver's counsel requested a bill of particulars. The state begrudgingly complied with the request. However, in doing so, it noted that in Mahoning County there is open file discovery and a county that has open file discovery does not violate discovery when it does not provide a bill of particulars.
 {¶ 37} Oliver argues on appeal that the bill of particulars was not specific enough and that his counsel was ineffective for failing to request a more specific bill of particulars. We review a claim of ineffective assistance of counsel under the standard pronounced inStrickland v. Washington (1984), 466 U.S. 668, 687. It is a two prong test: first, the appellant must show counsel's performance was deficient or *Page 9 
unreasonable under the circumstances; and second, the appellant must show that the deficient performance prejudiced the defense. Id.;State v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448.
 {¶ 38} Admittedly, the bill of particulars in this case is not extremely specific. However, Mahoning County has an open discovery policy. State v. Brown, 7th Dist. No. 03MA32, 2005-Ohio-2939, ¶ 88. There are at least four notices in the record from the state indicating that the information packet of discovery in compliance with local criminal rule of practice 9(b) and 10 was available at the prosecutor's office for defense counsel's review. 06/21/06; 09/05/06; 10/16/06; and 02/27/07. Open file discovery means, as the state's notices to defense counsel indicate, all of the state's evidence was available to the defense for trial preparation. Further, when the state allows open file discovery, a bill of particulars is not required. State v. Evans, 2d Dist. No. 20794, 2006-Ohio-1425, ¶ 24; State v. McDay (Sept. 20, 2000), 9th Dist. No. CA19610.
 {¶ 39} This rule clearly indicates that trial counsel was not deficient for failing to request a more specific bill of particulars and the failure to do so in no way affects the outcome because all the information was available to the defense. Likewise, there is no argument as to how he was prejudiced by the bill of particulars that was provided to him. The second assignment of error lacks merit.
 THIRD ASSIGNMENT OF ERROR {¶ 40} "THE TRIAL COURT ERRED WHEN IT ALLOWED THE VIDEO TAPED DEPOSITION OF ALICIA ADAMS TO BE PLAYED AT THE TRIAL IN LIEU OF LIVE TESTIMONY."
 {¶ 41} During the investigation of the crimes, the state discovered that Alicia Adams was the female with the black male at the BP in the early morning hours of May 8, 2006. Adams identified Oliver as the black male with her that was driving the maroon Pontiac. During discovery of the case, the state had Adams named a material witness and deposed her because, according to the state, Adams might have "an availability issue due to her compulsive crack cocaine use." This deposition included cross-examination by Oliver's counsel. The deposition was done because, according to the state, Adams might have "an availability issue due to her compulsive crack *Page 10 
cocaine use." When it came time for trial, the state asserted that Adams was unavailable and requested permission to use the deposition. The trial court granted the request.
 {¶ 42} Oliver contends that Adams was not unavailable, rather, she was incarcerated in the Trumbull County Jail and the state just wanted to use the deposition instead of having her take the stand. In support of his belief that Adams was in the Trumbull County Jail, he points to the docket where three days prior to trial, the state filed a subpoena for Alicia Adams in the Trumbull County Jail.
 {¶ 43} While that subpoena is in the file, the record in this case does not clearly indicate that Adams was incarcerated in Trumbull County at the time of the trial. The state filed a motion on the day of trial indicating it took reasonable efforts to secure Adams for trial; it had engaged the U.S. Marshals to secure her, but she could not be found. The state also asserted that according to her family, Adams was most likely out of state and out of reach of service. Furthermore, testimony at trial from Oliver's own witness, indicated that Adams' whereabouts were unknown. (Tr. 421).
 {¶ 44} Moreover, the trial court did not abuse its discretion by permitting the deposition to be used given the facts of this case.State v. Maurer (1984), 15 Ohio St.3d 239, 265 (stating a trial court possesses broad discretion in the admission of evidence). The deposition was admissible under Crim. R. 15(F) and Evid. R. 804.
 {¶ 45} Crim. R. 15(F) allows for the use of deposition testimony at trial if it is admissible under the rules of evidence and "the witness is out of state, unless it appears that the absence of the witness was procured by the party offering the deposition." Evid. R. 804(B)(1) indicates that former testimony is not hearsay if the declarant is unavailable to testify. Former testimony includes "testimony * * * given in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Therefore, as long as Adams was unavailable to testify at trial and the state did not procure her absence, the deposition was admissible. State v. Issa (2001),93 Ohio St.3d 49, 45 (stating that in *Page 11 
order for a declarant's statement to qualify under Evid. R. 804(B)'s exceptions to hearsay, it must be shown that the declarant is unavailable as a witness).
 {¶ 46} Section (A) of Evid. R. 804 defines "unavailability as a witness." Subsection (5) is applicable to the case at hand. It indicates that a declarant is unavailable when she "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means." It has been held that a witness is not considered unavailable unless the prosecution has made reasonable, good faith efforts to secure the presence of the witness at trial. Ohio v. Roberts (1980), 448 U .S. 56;State v. Workman, 3rd Dist. No. 15-06-09, 2007-Ohio-1360.
 {¶ 47} Here, as aforementioned, the state indicated that it made a good faith effort to secure Adams' presence at trial. It explained that it subpoenaed her at her last known address and it used the U.S. Marshals to try to secure her. As such, she was unavailable.
 {¶ 48} Furthermore, there is nothing in the record to indicate that the state procured her absence. In fact, considering it used the U.S. Marshals to try to find her, it appears it did everything to try to have her testify at trial.
 {¶ 49} Consequently, given the above, the trial court did not abuse its discretion in finding Adams unavailable and allowing the deposition to be played at trial. This assignment of error lacks merit.
 FOURTH ASSIGNMENT OF ERROR {¶ 50} "THE VERDICT OF GUILTY ON THE FAILURE TO COMPLY WITH ORDER OR SIGNAL OF POLICE OFFICER CHARGE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 51} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. *Page 12 
 {¶ 52} Oliver was convicted of counts two and three of the indictment, the second count was receiving stolen property and the third count was failing to comply with an order of a police officer in Boardman, Ohio. Thus, after a recitation of the elements of the crimes, only the evidence relating to those two charges will be discussed.
 {¶ 53} Receiving stolen property is defined as "no person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.51(A).
 {¶ 54} The relevant portion of the failing to comply with an order of a police officer statute that Oliver was found guilty of states:
 {¶ 55} "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
 {¶ 56} "* * *
 {¶ 57} "(C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.
 {¶ 58} "* * *
 {¶ 59} "(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
 {¶ 60} "* * *
 {¶ 61} "(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331.
 {¶ 62} At trial, multiple witnesses offered testimony in support of those crimes. David Townsend, the owner of the car (maroon Pontiac), testified that the car was his and that it was stolen sometime after 10:30 p.m. on May 7, 2006, from the driveway abutting his property. (Tr. 165). He stated his house is about a mile from Liberty. (Tr. 164). He made a report to Officer Wilson of the Youngstown Police Department. Officer Wilson testified that the license plate number of the car was DRU6603. (Tr. 370). Townsend averred that the car was in good condition prior to being taken, the *Page 13 
steering column was not stripped. (Tr. 168). He testified that he did not give Oliver permission to take the vehicle. (Tr. 180).
 {¶ 63} Gary Vogelberger, a clerk at the BP at the intersection of Rt. 224 and South Avenue, testified that he recognized the male and female driving the maroon Pontiac as having previously shoplifted at the BP and that was why he called the Boardman police and gave them the license plate number of the car. (Tr. 249-250). However, he was unable to conclusively identify Oliver as the black male. (Tr. 253).
 {¶ 64} Officer Salser, of Boardman Township Police Department, testified that he followed the maroon Pontiac and tried to initiate a stop. (Tr. 187). However, the car proceeded to accelerate and would not comply with his order. (Tr. 188). He stated that a black male was driving and a black female was in the passenger seat. (Tr. 196). However, he could not identify Oliver as the driver. (Tr. 197).
 {¶ 65} Alicia Adams testified by deposition. She indicated that she and Oliver went to the BP at the intersection of Rt. 224 and South Avenue during the early morning hours of May 8, 2006, to try to steal, however, the clerk recognized them and they left. (Tr. 264). She testified that the police began to follow them on Doral Drive and onto I-680 where it attempted to initiate a stop. (Tr. 266). She averred that Oliver would not stop and began accelerating. (Tr. 272). The police aborted its pursuit of Oliver but he continued to drive fast and she was scared. (Tr. 273). They proceeded to Youngstown, where the car overheated and Oliver had to put water in it. (Tr. 277-278). It was at that point that she noticed that the steering column on the maroon car Oliver was driving was stripped and that he had to start the car with a screwdriver. (Tr. 264, 278, 280). She said at that point Oliver stated that he stole the car from Liberty. (Tr. 278). After that, they picked up Vernus Warren at Martin Luther King Boulevard. (Tr. 282). During the course of her testimony, Adams admitted she had a record and that she had warrants for her arrest.
 {¶ 66} Vernus Warren testified next. She indicated she was currently incarcerated for robbery and burglary. (Tr. 329). She stated that Oliver and Adams picked her up in a car that had to be started by a screwdriver. (Tr. 330). Warren thought they picked her up either on Kensington or Belmont, but she was not sure. (Tr. 331-332). *Page 14 
 {¶ 67} Oliver and his father testified on his behalf. His father testified that Oliver was home when he went to bed on May 7, 2006, and was there when he woke up on May 8, 2006. (Tr. 447). He indicated that he locks the door at around 9:00 and only his wife and him have a key that has to be used to lock and unlock the door. Therefore, Oliver could not have gotten out or back into the house by going through the locked door.
 {¶ 68} Oliver himself testified that he was home May 7, 2006, by 8:15 or 8:30 p.m. and he stayed home. (Tr. 478, 482). He also testified that he does not know Alicia Adams or Vernus Warren. (Tr. 480, 495).
 {¶ 69} All the above testimony does not weigh against the convictions. Even the discrepancies between various witnesses' testimony does not render the verdict against the weight. The jury was in the best position to determine the witnesses' credibility. State v. DeHass (1967),10 Ohio St.2d 230. Consequently, we find no merit with this assignment of error.
 FIFTH ASSIGNMENT OF ERROR {¶ 70} "THE TRIAL COURT ERRED WHEN IT DID NOT GRANT THE DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL."
 {¶ 71} At the close of the state's evidence, Oliver moved for a Crim. R. 29 acquittal. He argued then and continues to argue now that the police failed to identify him as the person fleeing from the police in Boardman on May 8, 2006, or as the person who was chased in Youngstown on May 9, 2006. The trial court overruled the motion.
 {¶ 72} An appellate court reviews a denial of a Crim. R. 29 motion for acquittal using the same standard employed in reviewing a jury verdict for sufficiency of the evidence. State v. Carter (1995),72 Ohio St.3d 545, 553. For sufficiency, a conviction will not be reversed unless the reviewing court determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt.State v. Goff (1998), 82 Ohio St.3d 123, 138.
 {¶ 73} Only one of the arguments made needs to be addressed — the argument about identification of Oliver as the person fleeing from the police in Boardman. The *Page 15 
other argument regarding identification of Oliver as the person who was chased in Youngstown does not need to be addressed because the jury found that he was not guilty of that charge. Thus, any possible error associated with that charge could be deemed harmless.
 {¶ 74} As to the Boardman charge for failing to comply with order of the police, Oliver is correct that the police officer was unable to identify him as the driver of the maroon Pontiac with the license plate number DRU6603. However, as is discussed in the previous assignment of error, Adams did indentify him as the driver of the vehicle and indicated that after the officer put on his lights and sirens, Oliver continued to drive and in fact accelerated and made Adams afraid that they were going to crash. (Tr. 273). Thus, this was sufficient evidence to overcome the Crim. R. 29 motion. This assignment of error lacks merit.
 PRO SE SIXTH ASSIGNMENT OF ERROR {¶ 75} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTIONS FOR RELIEF FROM PREJUDICIAL JOINDER, RECUSAL, AND NEW TRIAL."
 {¶ 76} Oliver argues three separate and distinct arguments under this assignment of error. The first is that the trial court erred when it denied Oliver's motion for relief from prejudicial joinder. The second is that the trial court erred when it did not recuse itself after Oliver requested that it do so. The third is the trial court erred when it denied Oliver's motion for a new trial. Each will be addressed in turn.
 PREJUDICIAL JOINDER {¶ 77} Counsel for Oliver requested relief from prejudicial joinder by asserting that the Boardman charge should have been tried separately from the Youngstown charge. The trial court denied his motion. Oliver argues the trial court's failure to sever the indictment prejudiced him.
 {¶ 78} Crim. R. 8(A) states that two or more offenses can be contained in the same indictment when they are similar in character or based upon the same act or transaction. It is a general rule that "joinder of offenses is favored to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish inconvenience to *Page 16 
witnesses." State v. Powell (Dec. 15, 2000), 2d Dist. Nos. 18095, 99-CR-631, citing State v. Torres (1981), 66 Ohio St.2d 340, 343. The Ohio Supreme Court has further indicated that the joinder is to be "liberally permitted." State v. Schaim (1992), 65 Ohio St.3d 51, 58.
 {¶ 79} It is appellant's burden to show that he was prejudiced by the joinder. Powell, 2d. Dist. Nos. 18095 and 99-CR-631. However, the state can rebut the claimed prejudice in two different ways. The first way is the "other acts" test. Under this test, the state must exhibit that the evidence to be introduced at the trial of one offense would also be admissible at the trial of the other severed offense under the "other acts" portion of Evid. R. 404(B). State v. Schiebel (1990),55 Ohio St.3d 71, 86-87. The second way is the "joinder test". Under this test the state "is merely required to show that evidence of each crime joined at trial is simple and direct." State v. Lott (1990), 51 Ohio St.3d 160,163. The "joinder test" seeks to ensure that the jury does not confuse the offenses or improperly cumulate the evidence of the various crimes. Id. at 163-64. Rather, it "focuses on whether the trier of fact is likely to consider `evidence of one [offense] as corroborative of the other.'" State v. Wiles (1991), 59 Ohio St.3d 71, 77.
 {¶ 80} Here, the joinder test is easily met. The evidence was distinct as to what happened in Boardman and what happened in Youngstown. The Boardman testimony is discussed above in great detail. Both Alicia Adams and Officer Salser testified as to what occurred there. For the Youngstown charge of failing to comply, Officer David Wilson testified that he followed and tried to stop Oliver through north Youngstown. While he was not able to identify Oliver while he was driving, once he exited the vehicle and fled on foot, the officer got a description of his clothes. When Oliver was caught later, his clothes were similar to the description that was given by the officer.
 {¶ 81} The evidence for each was distinct and the jury's ability to find Oliver not guilty on one charge while guilty on the other shows it was able to look at the individual offenses and determine guilt. Thus, his argument lacks merit.
 RECUSAL OF TRIAL JUDGE {¶ 82} Before trial began, Oliver, through counsel, requested that the trial court recuse itself. The basis for the motion was that Oliver had filed a grievance against *Page 17 
Judge Sweeney, the judge presiding over the trial, and believed that because of that she would be biased against him. The state opposed the motion and the judge refused to recuse herself.
 {¶ 83} R.C. 2701.03 provides the exclusive means by which a litigant can assert that a common pleas judge is biased or prejudiced. Jones v.Billingham (1995), 105 Ohio App.3d 8, 11. Section (A) of that statute provides:
 {¶ 84} "If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section."
 {¶ 85} Our court has previously stated that a court of appeals is without authority to consider an error regarding the recusal or disqualification of a judge of the court of common pleas. State v.Clark, 7th Dist. No. 07MA87, 2008-Ohio-1179, ¶ 75, citing State v.Ramos (1993), 88 Ohio App.3d 394, 398.
 {¶ 86} Therefore, since Oliver failed to file an affidavit with the Ohio Supreme Court in accordance with R.C. 2701.03 and we do not have the authority to consider any alleged error on this issue, Oliver's argument is meritless.
 NEW TRIAL MOTION {¶ 87} After trial, Oliver filed a timely Crim. R. 33 motion for new trial. His argument was that the jury's verdict was inconsistent with their intention. He explained that the jury returned a not guilty verdict on count one, the May 9, 2006 failing to comply with an order of a police officer in Youngstown charge; found him guilty of count two, receiving stolen property charge; and found him guilty of count three, the May 8, 2006 failing to comply with the order a police officer in Boardman charge. He asserts that in discussions with the jury following the verdict, they indicated that the state failed to prove its case on the Boardman charge and that they intended to acquit him of that charge. *Page 18 
 {¶ 88} We review a trial court's decision to grant or deny a Crim. R. 33 motion for new trial for an abuse of discretion. State v.Schiebel (1990), 55 Ohio St.3d 71, 76.
 {¶ 89} Oliver's motion for new trial was based upon Crim. R. 33(A)(4). This section provides that a new trial will be granted when the verdict is contrary to law or not supported by sufficient evidence. Crim. R. 33(A)(4).
 {¶ 90} There is nothing in the record to support his argument that the jury intended to find him not guilty on the Boardman count of failing to comply and guilty on the Youngstown count of failing to comply. The alleged conversations that occurred between counsel and the jurors occurred off the record. We are a court of record and can only review the record; we cannot consider matters outside the record. State v.Carroll, 12 Dist. Nos. CA2007-02-030 and CA2007-03-041, 2007-Ohio-7075, ¶ 62. Furthermore, even if an affidavit of the jurors was filed and reviewable for this court, typically the use of juror testimony to impeach a jury verdict is prohibited. Evid. R. 606(B); State v.Robb, 88 Ohio St.3d 59, 2000-Ohio-275. Accordingly, we find that the trial court's denial of the new trial motion was not an abuse of discretion. This assignment of error is meritless.
 PRO SE SEVENTH ASSIGNMENT OF ERROR {¶ 91} "DEFENDANT-APPELLANT'S CONFRONTATION RIGHTS WERE VIOLATED WHEN HE WAS DEPRIVED OF `FACE TO FACE' CONFRONTATION OF A STATE'S WITNESS, PURSUANT TO THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION, AND ART. I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 92} Oliver argues his right to confrontation was violated at Adams' deposition because he was placed behind a two-way mirror where Oliver could see the witness, but the witness could not see him. He contends that his counsel asking to have a minute to consult with his client is an indication that Oliver was in another room while the deposition was occurring. (Tr. 307).
 {¶ 93} The record in this case does not disclose that Oliver was in another room. Counsel asking to have a minute to consult with his client does not indicate otherwise. Typically, discussions between counsel and the client are held off the record, where counsel asks to have some time to consult with his client. *Page 19 
 {¶ 94} Furthermore, the record indicates that Oliver was in the room during the deposition. This is evidenced by the following colloquy:
 {¶ 95} "Q. Correct?
 {¶ 96} "Miss Adams, just for one final clarification for the record, could you describe Mr. Oliver's general appearance to the court?
 {¶ 97} "A. He has on an orange jail uniform.
 {¶ 98} "Q. Is he present in the room today?
 {¶ 99} "A. Yes.
 {¶ 100} "Q. Could you please point him out for the record?
 {¶ 101} "A. That's Willie.
 {¶ 102} "Ms. Haselberger [assistant prosecutor]: Okay. For the record, let the record reflect that Miss Adams has identified Mr. Oliver present in court today as the gentleman she knows as Willie Oliver, Jr. Thank You." (Tr. 289-290).
 {¶ 103} Therefore, the issue of whether or not it is a confrontation clause violation for a defendant to not be in the same room as the deposition of the state's witness does not have to be addressed by this court because the record here discloses that Oliver was in the same room. Accordingly, his argument is factually flawed and fails. This assignment of error lacks merit.
 PRO SE EIGHTH ASSIGNMENT OF ERROR {¶ 104} "DEFENDANT-APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, IN CONTRAVENTION OF THESIXTH AMENDMENT OF THE U.S. CONSTITUTION, AND ART. I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 105} In this assignment of error, Oliver argues that trial counsel was ineffective for two reasons. First, because he did not object to the deposition of Adams and the fact that he was not in the same room during the deposition. Second, he argues that trial counsel was ineffective for failing to impeach Warren and Adams when their testimony was conflicting.
 {¶ 106} As previously mentioned, in order to prove ineffective assistance of counsel, Oliver must not only show that counsel's performance was deficient, but that the deficient performance prejudiced the defense. *Page 20 
 {¶ 107} First, in regards to the deposition testimony, the record indicates that Oliver was present at the time of the deposition. Furthermore, counsel agreed to Adams' deposition. This was a strategic decision and we will not second guess trial strategy. Likewise, the deposition could have occurred regardless of whether Oliver's counsel objected. As was explained earlier, the trial court found Adams to be a material witness. Moreover, as previously explained, use of the deposition testimony in this instance was permitted. Therefore, even if counsel was deficient by failing to object to the deposition, no prejudice resulted because the deposition was permissibly acquired and used.
 {¶ 108} Second, regarding the conflicting testimony of Warren and Adams, Oliver cannot show deficient performance. Warren and Adams' testimony did conflict in where Oliver and Adams picked up Warren and where they dropped off Adams. Adams testified that they picked up Warren on "Martin Luther King." (Tr. 283). She qualified this statement by adding that she is not familiar with streets and she believes it was "Martin Luther King." (Tr. 283). Adams testified she believed she was dropped off at the corner of "York" and "Delaware." (Tr. 283). Warren testified that although she was not sure, she thought they picked her up on either "Kensington" or "Belmont." (Tr. 332). She also testified that they dropped Adams off at the corner of "Alameda" and "Wirt."
 {¶ 109} The jury listening to this testimony could see the inconsistency. Likewise, on cross-examination, counsel re-questioned Warren on where she was picked up and where they dropped off Adams. This once again showed the inconsistencies in their testimony. Thus, there was no deficient performance. This argument lacks merit.
 PRO SE NINTH ASSIGNMENT OF ERROR {¶ 110} "THE STATE COMMITTED PROSECUTORIAL MISCONDUCT IN FAILING TO DISCLOSE EXCULPATORY EVIDENCE, WHICH WAS MATERIAL TO MR. OLIVER'S INNOCENCE, AND TO PRODUCE A STATE'S WITNESS AT TRIAL."
 {¶ 111} Two distinct arguments are made under this assignment of error. First, Oliver argues the state committed prosecutorial misconduct when it did not produce the still pictures from the BP of the man that the clerk observed. *Page 21 
 {¶ 112} The Ninth Appellate District has explained that when addressing a prosecutorial misconduct argument that raises purported discovery violations, courts should look to the Ohio Supreme Court's decision in State v. Joseph (1995), 73 Ohio St.3d 450. State v.Stembridge, 9th Dist. No. 23812, 2008-Ohio-1054, ¶ 23.
 {¶ 113} "In Joseph, the court explained that the State's failure to provide discovery will not amount to reversible error unless there is a showing that `(1) the prosecution's failure to disclose was a willful violation of [Crim. R. 16], (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect.' (Alterations sic.)Id. at 458, 653 N.E.2d 285, citing State v. Parson (1983),6 Ohio St.3d 442, 453 N.E.2d 689." Stembridge, 9th Dist. No. 23812, 2008-Ohio-1054, ¶ 23, quoting State v. Williams, 9th Dist. No. 21840, 2004-Ohio-4316, ¶ 8.
 {¶ 114} Oliver cannot show prejudice in this instance. The portion of the transcript that he directs this court to shows that the still pictures of the male at the BP were not discernable. Vogelberger, the clerk, testified:
 {¶ 115} "A. When the detective — talked to the detective, yes, I saw pictures, still pictures. I didn't view the tape itself but still pictures from the cameras.
 {¶ 116} "Q. Did they show the man at all?
 {¶ 117} "A. They showed him up by the counter but it was hard because his head was — you know, it was hard to pick him out." (Tr. 256-257).
 {¶ 118} Therefore, it is unclear how these pictures could have helped in his defense. Furthermore, Oliver does not even remotely suggest how the lack of these pictures prejudiced him. Consequently, this argument fails.
 {¶ 119} Oliver's second argument under this assignment of error is that the trial court never made a finding that Adams was unavailable to testify and therefore, her deposition should not have been used instead of live testimony. His contention is factually incorrect. The trial court on the day of trial, in response to the state's motion to use Adams' deposition, stated that she was unavailable and the state used its best efforts to locate her:
 {¶ 120} "The Court notes that in order to allow the introduction of the deposition the witness must be unavailable and that the out-of-court statement be reliable. In this *Page 22 
case the State subpoenaed the witness at her last known address and engaged the U.S. Marshals to secure her presence. Additionally, the witness has outstanding warrants for her arrest. Since Ms. Adams has not been located, the Court finds the State did use its best efforts to locate the witness and she is deemed unavailable." 07/30/07 J.E.
 {¶ 121} Considering all the above, this assignment of error lacks merit.
 CONCLUSION {¶ 122} For the foregoing reasons, the first assignment of error is sustained. The remainder of the assigned errors are overruled. As such, appellant's conviction is hereby affirmed, but the sentence is vacated and this case is remanded to the trial court for resentencing with instructions to consider R.C. 2921.331(C)(5)(b) along with all other pertinent statutory sections when issuing the sentence.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1