[Cite as *State v. Moore*, 2013-Ohio-1435.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.   12 MA 8 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| DARRIN MOORE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from Common Pleas
                                Court, Case No. 04CR504.

JUDGMENT:                       Affirmed.

APPEARANCES:
For Plaintiff-Appellee:         Attorney Paul Gains
                                Prosecuting Attorney
                                Attorney Ralph Rivera
                                Assistant Prosecuting Attorney
                                21 West Boardman Street, 6th Floor
                                Youngstown, Ohio  44503

For Defendant-Appellant:        Attorney Lynn Maro
                                7081 West Boulevard
                                Youngstown, Ohio  44512

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                Dated:  March 27, 2013

VUKOVICH, J.

{¶1} Defendant-appellant Darrin Moore appeals after being sentenced on multiple offenses resulting partially from a plea and partially from a jury verdict entered in the Mahoning County Common Pleas Court. Appellant sets forth nine assignments of error, raising issues with joinder, the omission of a name from the state's witness list, complicity on a firearm specification, the refusal to permit plea withdrawal, the admission of testimony from the first trial, sufficiency of the evidence, flight instructions, prosecutorial misconduct, and weight of the evidence. For the following reasons, appellant's convictions are affirmed.

STATEMENT OF THE CASE

{¶2} On September 9, 2003, a woman in a Boardman parking lot was restrained by two teens armed with a gun. Before the woman escaped, she was hit with the gun, her purse was stolen, her bra was removed, and her breasts and buttocks were fondled. The teens then fled in her vehicle. The car was spotted later that day, and a police car chase ensued. Appellant was eventually apprehended after fleeing from the vehicle. Weeks later, he escaped from custody after claiming to need medical treatment.

{¶3} On December 10, 2003, an off-duty security guard reported that his 1993 blue Buick LeSabre was stolen from the parking lot of 541 Club, a private club on the east side of Youngstown. (Tr. 335-336). The trunk of his car contained his gun belt with a holster, a silver and black .357 magnum, speed loaders, and .38 caliber bullets. (Tr. 334-336).

{¶4} On December 11, 2003 at 10:20 p.m., Mr. Robert Smith was shot four times in the parking lot at 541 Club and his 1997 burgundy Cadillac Catera was stolen from the lot. He died from his wounds. The bullets recovered from the body and scene were of the type fired by a .357 magnum. (Tr. 381).

{¶5} That night around midnight, appellant and Damon Clark stopped at a friend's house. This friend described Clark as acting nervous and appellant as acting normal. When she asked appellant if he was "up to no good," he responded, "pow, pow, pow." (Tr. 296, 308, 317). She noticed that appellant had a chrome revolver

and a police-like holster on a belt. She then witnessed appellant empty shell casings from the gun into an ashtray, empty the ashtray into the trash, and take the trash to the curb. (Tr. 297-298).

{¶6} At this time, she saw a blue Buick LeSabre on the street in front of her four-plex. (Tr. 299). She also saw a white van parked across the street. (Tr. 299). In the back driveway, she noticed a burgundy Cadillac Catera. (Tr. 300). When appellant left after half an hour, the Cadillac remained. After this witness learned about what happened to Mr. Smith, she told appellant and Clark to get the Cadillac out of her driveway. (Tr. 301-302). During this conversation, appellant told her that "they shot some guy on the south side." (Tr. 302). Appellant then asked her for a milk carton so they could burn the car. (Tr. 302-303).

{¶7} A few days after Mr. Smith was killed, the police received a call that a car was burning on an abandoned road. (Tr. 270-272, 481). The car turned out to be the one stolen from the murder victim. A witness saw a white van leaving the scene of the fire. (Tr. 477, 479). This van was also seen at a nearby gas station. A video surveillance tape showed Damon Clark exiting the stolen white van and buying gas. (Tr. 480-481).

{¶8} Damon Clark was then arrested, leading police to speak with the friend who saw appellant empty the shells out of the gun. The police also spoke to Clark's cousin, who had been dating appellant for a month. (Tr. 425-426). This witness stated that appellant and Clark came to her house in the early morning hours of December 11, 2003 and spent the night. In the morning, they asked her if she saw the news. (Tr. 428). She also testified that appellant told her he shot a man and he was worried Clark was going to tell on him. (Tr. 430-431, 435).

{¶9} On January 8, 2004, the police learned appellant's location and began surveillance. When appellant drove away in a stolen vehicle, the police activated their lights. (Tr. 384-385, 387-389). Appellant refused to stop and eventually crashed into a fence. (Tr. 385). Appellant then fled on foot, and the police found him hiding behind wooden crates in an industrial park. (Tr. 385- 386).

**{¶10}** Appellant was charged with multiple offenses, which as will be seen, result in a convoluted procedural history. Some of appellant's offenses were tried to a jury in 2006. On appeal of those convictions, this court found issues with joinder and a violation of a pre-indictment non-prosecution agreement entered in the juvenile court with regards to certain offenses. *State v. Moore*, 7th Dist. No. 06MA15, 2008-Ohio-1190. On the joinder issue, we held that appellant's escape charge from October of 2003 and his receiving stolen property charge resulting from driving a stolen car during his January of 2004 arrest should not have been tried with his December of 2003 aggravated murder and aggravated robbery charges. *Id.* at ¶ 80-81 (and a failure to comply charge that no longer exists). We thus remanded for three separate trials: one for the December of 2003 aggravated murder and aggravated robbery; one for the October of 2003 escape; and one for the January of 2004 receiving stolen property count. *Id.* at ¶ 83, 169. (The trial court had already severed the charges from the September of 2003 carjacking of the woman, and these had not yet been tried.)

**{¶11}** After remand, a superseding indictment was filed containing the following counts: (1) Aggravated Murder; (2) Aggravated Robbery (of the murder victim on December 11, 2003); (3) Receiving Stolen Property (possessing the stolen gun on December 11, 2003); (4) Aggravated Robbery (from the September 9, 2003 incident); (5) Gross Sexual Imposition; (6) Kidnapping; (7) Escape (on October 22, 2003); (8) Receiving Stolen Property (the security guard's car); and (9) Receiving Stolen Property (the car driven during the January 8, 2004 arrest).

**{¶12}** On June 22, 2010, appellant entered guilty pleas to counts four, five, and six, the counts relating to the September 9, 2003 carjacking of the woman in Boardman. As part of the plea, the gross sexual imposition charge was changed to complicity at appellant's request (where he expressly recognized that this did not change the offense or the sentence). Sentencing on these charges was postponed until the final sentencing on all charges, and bond was reduced.

**{¶13}** The court had set all of the December 11, 2003 charges for one jury trial. On February 14, 2011, the first morning of trial, the defense objected to the

receiving stolen property count (representing the stolen murder weapon) being tried with the aggravated murder and aggravated robbery counts. (Tr. 2). Nevertheless, the trial proceeded on all three counts. On February 22, 2011, the jury found appellant guilty of these three counts and two firearm specifications.

{¶14} On February 24, 2011, appellant filed a motion to withdraw the plea to the offenses involved in the September 9, 2003 carjacking: aggravated robbery, complicity to gross sexual imposition, and kidnapping.

{¶15} The next day, he pled guilty to the escape charge, and the state dismissed the two receiving stolen property counts and recommended a five-year concurrent sentence for the escape.

{¶16} After entering this plea, the defense presented arguments in support of the motion for plea withdrawal on the September carjacking counts. The court denied this plea withdrawal motion.

{¶17} The court then sentenced appellant on these and the other remaining counts as follows: (1) twenty years to life for aggravated murder; (2) ten years, consecutive, for aggravated robbery; (3) eighteen months, consecutive, for receiving stolen property (gun); (4) ten years, consecutive, for aggravated robbery; (5) eighteen months, consecutive, for complicity to gross sexual imposition; (6) ten years, consecutive, for kidnapping; (7) five years, concurrent, for escape.

{¶18} The three-year firearm specifications from the same incidents merged, leaving one specification for the September carjacking and one specification for the December murder/robbery. Appellant's aggregate sentence totaled fifty-nine years to life, and he was labeled a Tier I sex offender.

{¶19} Trial counsel failed to file a notice of appeal as instructed by the trial court in its sentencing entry on the belief that the simultaneously appointed appellate counsel would file the appeal; however, appellate counsel was never informed of her appointment. This court granted leave to file a delayed appeal in January of 2012, and the briefs were filed in July and November of 2012.

ASSIGNMENT OF ERROR NUMBER ONE

{¶20} Appellant sets forth nine assignments of error, the first of which alleges:

**{¶21}** "THE TRIAL COURT ERRED BY GRANTING IMPROPER JOINDER OF COUNT 3 OF THE INDICTMENT ON THE MORNING OF TRIAL THEREBY DEPRIVING APPELLANT OF A FAIR TRIAL IN VIOLATION [OF] THE LAW OF THE CASE AND THE [CONSTITUTION]."

**{¶22}** An indictment can contain multiple offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim. R. 8(A) (joinder of offenses). "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

**{¶23}** If it appears that a defendant is prejudiced by joinder of offenses, the court shall order separate trials or provide such other relief as justice requires. Crim.R. 14 (relief from prejudicial joinder). The defendant bears the burden to prove prejudice from the joinder of multiple offenses in a single trial and to prove that the trial court abused its discretion in denying severance. *State v. Coley*, 93 Ohio St.3d 253, 259, 754 N.E.2d 1129 (2001). There is no prejudice if the evidence of the offense sought to be severed would have been admissible anyway. *Id.* Alternatively, there is no prejudice if the evidence supporting each offense is simple and direct. Id.

**{¶24}** One argument appellant presents here is that joinder of the stolen gun charge was prejudicial because the evidence regarding the stolen gun does not show a similar pattern as the conduct involved in the aggravated murder and aggravated robbery. He emphasizes that the gun was stolen the night before the murder/robbery from a different victim.

**{¶25}** However, as appellant recognizes, this court previously ruled that evidence regarding the security guard's stolen gun was admissible in the murder/robbery trial. *Moore*, 7th Dist. No. 06MA25 at ¶ 85-111. Thus, a charge regarding the possession of the very weapon used to kill and rob the victim can be tried at the same time as the murder/robbery case. The possession of the stolen

weapon and the murder/robbery with that same weapon are connected together and are part of a course of criminal conduct. *See* Crim.R. 8(A). Moreover, the evidence as to each offense was simple and direct and was not confusing. *See Coley*, 93 Ohio St.3d at 259. Thus, this argument is overruled.

**{¶26}** Appellant's alternative argument is that the trial court violated the prior appellate mandate and the law of the case. As aforementioned, the aggravated murder and aggravated robbery charges were previously tried to a jury, and on appeal, this court sustained appellant's joinder argument finding in pertinent part that the October 2003 escape and the January 2004 receiving stolen property counts should have been severed from the murder/robbery trial. *Moore*, 7th Dist. No. 06MA25 at ¶84.

**{¶27}** In doing so, we explained that the trial court had previously severed the count involving the January of 2004 stolen car from the December of 2003 murder/robbery case, but then on the morning of the murder/robbery trial, the trial court changed its mind and ordered the stolen property count to proceed to trial that day. *Id.* at ¶ 79. We found this inherently prejudicial. *Id.* at ¶ 80. We also stated that the evidence used to establish the stolen car count would not have been admissible at the murder/robbery trial. *Id.* at ¶81 (making this same holding as to the escape charge). As a remedy, we ordered three separate retrials on remand: one for the aggravated murder and aggravated robbery counts; one for the escape count; and one for the stolen vehicle count. *Id.* at ¶ 83, 169.

**{¶28}** On remand, appellant entered a plea on the escape count, and the stolen vehicle count was dismissed. The aggravated murder and aggravated robbery trial also contained a receiving stolen property count to represent the stolen gun that appellant used to commit the murder. Appellant believes that the trial court violated our mandate and the law of the case by not having a trial that only contained the aggravated murder and aggravated robbery counts.

**{¶29}** At its most basic, the law of the case doctrine provides that when a reviewing court makes a pronouncement on a rule of law, that decision should continue to govern the same issues in subsequent stages of that same case.

*Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). If, at a rehearing following remand, a trial court is confronted with "substantially the same facts and issues as were involved in the prior appeal," the trial court must observe the appellate court's decision on the applicable law and follow the mandate provided. *Nolan*, 11 Ohio St.3d at 3-4. The law of the case is said to be an amorphous concept. *Arizona*, 460 U.S. at 618. It is a rule of practice, as opposed to a binding rule of substantive law. *Nolan*, 11 Ohio St.3d at 3

{¶30} Here, the gun count was not at issue in the prior appeal. A superseding indictment[1] added this receiving stolen property count to account for the gun that appellant used to commit the murder. There is no inconsistency of results involved, relitigation of settled legal principles, or disrespect of an appellate holding on an issue of law, and the facts relevant to the indictment are not substantially the same with regards to the count at issue here. *See id.* at 3-4.

{¶31} The essence of our holding was that the aggravated murder and aggravated robbery counts were to be severed from the escape count which would all be severed from the stolen vehicle count. This occurred on remand. As the legal issue regarding joinder of the gun count was not before us in the prior appeal, joinder of the receiving stolen property count upon remand (and after a new indictment added this charge to account for the stolen gun) would not violate the law of the case doctrine or defy our prior mandate.

{¶32} Lastly, appellant argues that at least his trial counsel had the right to assume that, based upon the language of the appellate decision, one trial would proceed only on the aggravated murder and the aggravated robbery counts. Appellant suggests that counsel was unaware that the trial would also proceed on the stolen gun count until the morning of the February 14, 2011 trial, and thus, he was not prepared to defend this count.

---

[1] Apparently, the re-indictment process was initiated due to concern over a June of 2009 case out of this court dealing with mental states in the indictment. *See* State's July 14, 2009 Motion, citing *State v. Freeman*, 7th Dist. No. 08MA81, 2009-Ohio-3052.

**{¶33}** Counsel's arguments to the trial court were mainly based upon our prior decision, the unfairness of the state adding charges after remand, and his desire to have more to negotiate with when pleading to other charges. (Tr. 2-3, 5-6). Still, by stating that he believed the trial court was under the assumption that they were only proceeding on the murder/robbery, counsel suggested that he was surprised that the state was proceeding on the stolen gun count as well. However, defense counsel did not actually assert that he was unprepared to defend the stolen gun count.

**{¶34}** And, the circumstances do not support a finding of surprise. For instance, the security guard was listed as a witness for the trial. He testified at the last trial, and we found his testimony on the stolen gun admissible. In addition, the friend who saw appellant empty the gun and throw away the casings testified at the last trial and was again listed as a witness in the murder trial. Thus, counsel was prepared to be presented with *the evidence* regarding appellant's possession of the stolen gun.

**{¶35}** Moreover, the trial court's February 19, 2010 judgment entry (entered one year prior to trial) stated that a single trial would contain the counts relating to the December 11, 2003 incident. The stolen gun count was one of those counts as the indictment alleged that appellant possessed the stolen gun on that day. Accordingly, reversible error has not been demonstrated.

**{¶36}** For all of these reasons, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶37}** Appellant's second assignment of error provides:

**{¶38}** "THE TRIAL COURT ERRED IN FAILING TO HOLD A DISCOVERY SANCTIONS HEARING AND INQUIRE INTO THE CIRCUMSTANCES OF THE STATE'S DISCLOSURE OF A WITNESS THE MORNING OF TRIAL."

**{¶39}** Before jury selection on the afternoon of February 14, 2011, defense counsel noted that the state had just added Mr. Gregory Hundley to its February 4, 2011 witness list. Defense counsel then stated, "That would require some action on my part." The court responded that it would give counsel plenty of time at the end of the day and suggested that the state bring the witness over from the jail for defense

counsel. (Tr. 9). Defense counsel replied, "I will just put it this way; for purposes of the record today I am going to object to him being included in the trial in this action since he was not on the witness list. He did testify at the previous trial, however." (Tr. 9-10). The state pointed out that the defense had the transcript of the witness's prior testimony, and the court assured counsel that he would be given sufficient time to review the transcript. (Tr. 10).

{¶40} Appellant argues here that the trial court did not sufficiently inquire into why the state's witness list failed to contain the name of this witness. Appellant notes that defense counsel was not the same counsel from the first trial and suggests that there was no reason for counsel to prepare for this witness since his name was not on the list.

{¶41} The purpose of the discovery rule is to provide the parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system, the rights of defendants, and the well-being of witnesses, victims, and society at large. Crim.R. 16(A). Each party shall provide to opposing counsel a written witness list, including the names and addresses of any witness it intends to call in its case-in-chief or reasonably anticipates calling in rebuttal. Crim.R. 16(I).

{¶42} Upon demand, the state is also required to provide the criminal records of the defendant, a co-defendant, and the record of prior convictions of a witness in the state's case-in-chief or that it reasonably anticipates calling as a witness in rebuttal. Crim.R. 16(B)(2). If it is brought to the attention of the trial court that a party has failed to comply with the discovery rule, the trial court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶43} Appellant believes that the Ohio Supreme Court's *Papadelis* case supports his position that a court abuses its discretion in allowing the state to use a witness not named until the morning of jury selection without inquiring into why the state failed to list that witness. However, that case is wholly distinguishable.

{¶44} In *Papadelis*, the trial court excluded all of the defendant's witnesses from testifying except the defendant himself; those witnesses would have provided a complete defense to the charges. *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1, 4, 511 N.E.2d 1138 (1987). The Supreme Court concluded that the discovery sanction imposed by the trial court denied the defendant the constitutional right to present a defense. *Id.* at 4-5.

{¶45} The Court then adopted the position that "when presented with the claim that exclusion of a criminal defendant's witnesses is too harsh a sanction," the trial court must make an inquiry into the surrounding circumstances prior to excluding a party's witnesses and find that no lesser sanction would accomplish the purpose of the discovery rules and that the state would be prejudiced if the witnesses were permitted to testify. *Id.* at 5. The Court continued: "a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Id.*

{¶46} *Papadelis* dealt with the defendant's constitutional right to present a defense and explained the trial court's duty prior to *imposing* discovery sanctions. The case at bar deals with the trial court's decision to allow a state's witness to testify, rather than imposing the harsh and last-resort sanction of excluding a defense witness.

{¶47} Furthermore, although there was no direct question presented to the prosecutor on the record as to why the name was left off the witness list, the majority of indications in the record leave one with the impression that the omission was the result of mere accidental oversight. *See State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983) (where the Supreme Court merely found there was nothing in record indicating the lack of disclosure was willful). In addition, the trial court did inquire into the potential prejudice involved in the late addition to the last official witness list and the reasons why prejudice was not great (the defense was aware of the existence of this witness and his story). The court then exercised its discretion to fashion a remedy involving time and transportation.

**{¶48}** Notably, defense counsel did not ask for a continuance but sought total exclusion of the witness. The trial court fashioned the remedy of providing defense counsel time at the end of the day to interview the witness and asked the state to bring the witness to counsel so that counsel would not have to go to the jail. We can presume that this occurred since no further objection was entered prior to this witness taking the stand. (Tr. 346-347).

**{¶49}** Importantly, this witness testified at the prior trial. Defense counsel had this court's prior appellate decision, which stated, "Gregory Hundley testified to Moore's admission to him in jail about the Smith robbery and murder." *Moore*, 7th Dist. No. 06MA25, ¶ 27. We even cited to pages 623-632 of the transcript where this occurred. *Id.* And, defense counsel admitted to the trial court that he possessed this witness's prior testimony within the transcript of the prior trial. Presumably, counsel engaged in the open file discovery offered as well and reviewed the entire case file, which also contained the state's supplemental discovery of May 26, 2005 involving this witness's detailed statement

**{¶50}** Also significant here is the fact that, after remand and the appointment of new trial counsel, Mr. Hundley was subpoenaed to appear for the July of 2009 trial of this action, which was then continued, eventually resulting in the within February of 2011 trial date. And the state provided the criminal history of Mr. Hundley in its July 10, 2009 supplemental discovery for the trial of the offenses at issue herein. *See* Crim.R. 16(B)(2) (the state is required to provide the criminal records of its witnesses). Additionally, an order to convey Mr. Hundley from jail to testify was filed on February 11, 2011.

**{¶51}** Regarding preparation, we point out that, on the day trial began, defense counsel filed a subpoena for the jail records concerning the pod placements of Mr. Hundley and appellant. Moreover, the defense objected to this witness prior to jury selection on February 14, 2011, but Mr. Hundley was not called to testify until February 17, 2011. (Tr. 9, 321, 347). *See Parson*, 6 Ohio St.3d at 445 (emphasizing that by the time the undisclosed evidence was admitted into the trial, appellant was well aware of its existence). Finally, we note that the court recessed for the day at

noon on February 15 and at 2:40 p.m. on February 16, providing plenty of extra time to prepare. (Tr. 139, 321).

**{¶52}** Considering all of these circumstances, there is no indication that counsel was not prepared to cross-examine Mr. Hundley or that the trial court abused its discretion in allowing Mr. Hundley to testify. As such, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER THREE

**{¶53}** Appellant's third assignment of error contends:

**{¶54}** "APPELLANT WAS DENIED DUE PROCESS AND WAS SUBJECT TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE [CONSTITUTION] WHEN THE TRIAL COURT IMPOSED A SENTENCE FOR A FIREARM SPECIFICATION THAT WAS NOT AN 'OFFENSE'."

**{¶55}** The court instructed the jury on complicity. (Tr. 545-547). In doing so, the court explained that the concept applied to the indicted crimes and to the specifications. (Tr. 546-547). The only citation to this court regarding an objection to this instruction is to an argument *after the fact at the sentencing hearing* where defense counsel objected to sentencing on the firearm specification pointing to questions the jury raised and vaguely referencing complicity on firearm specifications. (Tr. 15-16).

**{¶56}** "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). The failure to object to jury instructions at a time when the court can correct them waives all but plain error. *State v. Hartman*, 93 Ohio St.3d 274, 289, 754 N.E.2d 1150 (2001). And, if the record supports the preservation of an issue, the brief must provide this court with citation to the proper and timely place in the record where this preservation occurred. *See* App.R.12 (A)(2); App.R. 16(A)(7), (D).

**{¶57}** We did notice, in reviewing the record ourselves while conducting our manifest weight review infra, that during the finalization of instructions, defense counsel objected to the complicity instruction. However, there was no mention of the

firearm specification issue. Rather, the instruction seemed to be related to complicity in general. More specific arguments may have been made earlier. (Tr. 572) (for instance, when objecting to the flight instruction, counsel referenced the arguments he made previously). Yet, we have not located prior arguments on the record specifically contending that the complicity statute is inapplicable to firearm specifications.

**{¶58}** In any event, appellant's argument lacks merit. Appellant acknowledges that the Ohio Supreme Court has previously held that a defendant is subject to sentencing enhancement on a firearm specification regardless of whether he was the principal or an unarmed accomplice. *State v. Chapman*, 21 Ohio St.3d 41, 42-43 487 N.E.2d 566 (1986). *See also State v. Moore*, 16 Ohio St.3d 30, 476 N.E.2d 355 (1985).

**{¶59}** Appellant suggests that the Supreme Court's *Chapman* decision conflicts with the plain language of the complicity statute. This statute begins by stating in pertinent part: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * Aid or abet another in committing the offense." R.C. 2923.03(A)(2). The statute concludes by stating: "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).

**{¶60}** Appellant points to the two statutory references to "an offense" and emphasizes that a firearm specification is not an offense. Notably, the *Chapman* court quoted the language of R.C. 2923.03(F) and still concluded that an unarmed person can be sentenced for a firearm specification if they were only complicit in committing the offense to which the specification attached. *Chapman*, 21 Ohio St.3d at 42.

**{¶61}** In disregarding this law, appellant relies on the recent Supreme Court case of *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498. In that case, the Court held that the offense of discharging a firearm into a habitation and a firearm specification are not allied offenses of similar import subject to merger

because a firearm specification is not a criminal offense but is a sentencing enhancement that attaches to the underlying offense. *Id.* at ¶ 9, 16, 19.

**{¶62}** Appellant focuses on the language stating that a firearm specification is not a criminal offense and believes that this changes the analysis of whether the complicity statute would apply to a firearm specification since the complicity statute speaks in terms of "an offense." He then concludes that *Ford* implicitly overruled *Chapman*.

**{¶63}** However, when the *Chapman* Court ruled that an unarmed accomplice can be convicted of the underlying offense and the firearm specification due to the complicity statute, the Court's holding did not rely on a finding that a firearm specification was an offense as appellant suggests. As such, *Ford* did not alter *Chapman*.

**{¶64}** Moreover, the *Ford* case had nothing to do with complicity, and thus, does not offer a compelling reason to alter well-established complicity holdings. *See State v. Howard*, 8th Dist. No. 97695, 2012-Ohio-3459, ¶ 24 (a post-*Ford* case stating, "It is well settled that an unarmed accomplice can be convicted of an underlying felony, together with a firearm specification, based on an aider and abettor status."). Finally, when expressly asked to revisit *Chapman*, the Supreme Court reiterated that one person's use of a gun can be imputed to another so that a firearm specification is proper for an unarmed accomplice. *State v. Jackson*, 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶ 32.

**{¶65}** In conclusion, a firearm specification was and still is an enhancement to a predicate offense, and the complicity statute provides that the person complicit in the offense can be prosecuted "and punished" as if he were the principal. R.C. 2923.03(F). Thus, complicity can be used to establish the predicate offense, and the enhancement can follow suit. Accordingly, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER FOUR

**{¶66}** Appellant's fourth assignment of error argues:

**{¶67}** "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO VACATE THE PLEA PRIOR TO SENTENCING [IN] VIOLATION OF THE [CONSTITUTION]."

**{¶68}** On June 22, 2010, appellant pled guilty to the offenses resulting from the September of 2003 carjacking of the woman in Boardman: aggravated robbery, complicity to gross sexual imposition, and kidnapping (each with a firearm specification merged to a single specification). Sentencing was reserved until after the trials on the remaining offenses, and appellant's bond was reduced pending sentencing.

**{¶69}** On February 22, 2011, a jury returned guilty verdicts on the offenses resulting from the December of 2003 murder: aggravated murder, aggravated robbery, and receiving stolen property (the gun). Sentencing was set for February 25, 2011.

**{¶70}** On February 24, 2011, appellant filed a brief motion to withdraw the June 22, 2010 guilty plea. The motion stated that he entered the plea when he was under some duress over issues relating to other matters pending against him at the time. The motion contended that plea withdrawal would not negatively affect the administration of justice because the court had other matters pending against appellant in the same case number which had yet to proceed to trial.

**{¶71}** Just prior to the sentencing hearing, however, appellant entered a plea to escape, and the state dismissed the two remaining counts in the indictment, both receiving stolen property counts (cars). (Tr. 2, 10). The state also dismissed two other indictments: involving improper conveyance into a detention facility and two counts of assault on a police officer. (Tr. 4, 11). And, the state agreed to recommend a concurrent sentence on the escape count.

**{¶72}** At sentencing, defense counsel advised that the defendant wanted the plea withdrawal matter decided that day (because he "wants to delay no transportation"). (Tr. 18). As the prosecutor had not seen the motion yet, the court had the prosecutor review it at that time. (Tr. 17). In arguing the motion, defense

counsel initially merely stated that pre-sentence motions should be liberally granted and left the decision with the court.  (Tr. 19).

**{¶73}** In responding, the state set forth arguments concerning the various factors to be considered.  The state noted that the court was holding a full hearing on the motion. The state pointed out that the plea negotiations were extensive in this case that had been pending since 2004 and that the court held a full plea hearing. (Tr. 19-20, 22). The prosecutor characterized the reasons for withdrawal expressed in the motion (stress about other pending charges) as inadequate, emphasizing that the defendant does not claim actual innocence.  (Tr. 20-21).  The state suggested that the defendant already received benefits from the plea in the form of a postponed sentencing, which allowed him to benefit from a reduced bond pending trial in the murder case.  (Tr. 21).

**{¶74}** It was urged that the motion was not timely as it was filed the day before sentencing.  (Tr. 20).  It was emphasized that the plea was entered on the morning the case was set to proceed to trial; thus, the state had all its witnesses present that day (as opposed to a plea entered at a pretrial hearing).  (Tr. 21).  The prosecutor alleged prejudice as this 2004 case would be put back on the docket after remaining inactive for eight months, asserting that some of the witnesses were out-of-state.  As an example of how difficult it was to find witnesses for old cases, it was noted how they could not find a witness in appellant's murder case and had to use her prior testimony.  The prosecutor then lamented that these three offenses never went to trial, so no prior transcripts exist (as they did in the murder case).  (Tr. 23).

**{¶75}** Defense counsel then opined that the state's timeliness argument carried no weight because the charges in the plea are in the same indictment as the charges that went to trial and that a defendant can rightly wish to change his plea on some charges after receiving a guilty verdict on other charges.  (Tr. 25-26).  Defense counsel urged that at the time appellant pled to the carjacking case, he was anticipating the murder trial would turn out differently.  (Tr. 26).  Counsel reiterated the claim in the motion that the defendant was under stress at the time of the plea due to the multitude of charges pending against him.  (Tr. 26-27).  Finally, counsel

argued that if the state was ready to go to trial eight months ago, they could be ready again. (Tr. 27).

**{¶76}** The prosecutor then complained that the plea had apparently been merely a defense strategy with a preconceived intent to seek withdrawal if the defendant was convicted in the murder case. (Tr. 27-28). The state urged that being convicted after a jury trial on other offenses is not a valid reason for plea withdrawal. (Tr. 28). Defense counsel replied, "It's absolutely a legitimate reason if you have the hopes that that would not occur." (Tr. 28).

**{¶77}** Appellant then spoke. He reminded the court that he previously sent a letter to the court expressing a desire to withdraw the plea. (This letter is not in the file or recorded in the docket as being received for filing.) He explained that the only reason he pled guilty to the carjacking offenses was because he thought his co-defendant would be testifying against him. (Tr. 29).

**{¶78}** The co-defendant in the carjacking case, who was not the same co-defendant as in the murder case, was incarcerated in the Department of Youth Services. This co-defendant had been offered a deal in exchange for his testimony against appellant and was subpoenaed to testify at the trial scheduled for the morning the plea was entered. Appellant disclosed that his reason for plea withdrawal was that he recently learned that his co-defendant had been proclaiming that he would not have testified against the defendant had he taken the case to trial. (Tr. 29-31).

**{¶79}** It was then mentioned that inmates typically make such remarks after their testimony is no longer needed. It was also remarked that the state would have presented the victim's testimony against appellant in any event. (Tr. 31). In the end, the trial court overruled the plea withdrawal motion in the carjacking case.

**{¶80}** On appeal, appellant contends that his duress combined with his belief that his co-defendant would be testifying against him are sufficient reasons for plea withdrawal. He states that his motion should not be considered untimely. He also argues that the state did not show prejudice because the mere reactivation of a case

on the docket is not a sufficient showing of prejudice and urges that there is no indication that the case involves out-of-state witnesses as the state claimed.

{¶81} Absent a manifest injustice, a motion to withdraw a guilty plea can only be made prior to sentencing. Crim.R. 32.1. Thus, a presentence motion to withdraw "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). Still, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. *Id.* There must be a reasonable and legitimate basis for plea withdrawal. *Id.*

{¶82} The decision regarding whether a reasonable and legitimate basis exists is within the sound discretion of the trial court and that decision thus will not be disturbed by a reviewing court absent an abuse of discretion. *Id.* A mere error in judgment is not an abuse of discretion; rather, we only reverse if the denial of plea withdrawal was unreasonable, arbitrary, or unconscionable. *Id.* The good faith, credibility, and weight of the movant's assertions in support of the motion are primarily questions for the trial court. *State v. Vari*, 7th Dist. No. 07MA142, 2010-Ohio-1300, ¶ 78.

{¶83} This court has set forth a non-exclusive list of factors to be weighed in considering whether to allow presentence plea withdrawal: (1) the representation afforded to the defendant by counsel, (2) whether the defendant understood the nature of the charges and potential sentences, (3) the extent of the plea hearing, (4) the extent of the hearing on the motion to withdraw, (5) whether the trial court gave full and fair consideration to the motion, (6) the reasons for the motion, (7) whether the accused was perhaps not guilty or had a complete defense to the charge, (8) whether the timing of the motion was reasonable, and (9) whether the state will be prejudiced by withdrawal. *State v. Cuthbertson*, 139 Ohio App.3d 895, 898-899, 746 N.E.2d 197 (7th Dist.2000), citing the factors first set forth in *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788, 790 (1st Dist.1995).

{¶84} In *Cuthbertson*, we reversed the trial court's denial of the defendant's plea withdrawal motion as there was no allegation of prejudice to the state, counsel was not very involved in the plea withdrawal request, the defendant claimed that he

was not the perpetrator of the murder but was merely a witness, and the motion was timely filed two weeks before the scheduled sentencing hearing and one week after the plea hearing. *Cuthbertson*, 139 Ohio App.3d at 899–900.

{¶85} Still, although a lack of prejudice to the state is an important factor, the mere lack of prejudice does not mandate plea withdrawal. *State v. Leasure*, 7th Dist. No. 01BA42, 2002-Ohio-5019, ¶ 19. No one of the factors is conclusive. *Cuthbertson*, 139 Ohio App.3d at 899. We proceed to review the factors in light of the particular circumstances in this case.

{¶86} As to the first factor, there is no allegation that counsel rendered ineffective assistance, and it appears that counsel afforded proper representation throughout this case. Regarding the second and third factors, the plea hearing was not said to be lacking, and appellant does not claim that he did not understand the nature of the charges or the potential sentences. Plea negotiations were extensive; with different counsel representing appellant in the early years of negotiation so that he had the benefit of varied advice regarding the carjacking case.

{¶87} Relevant to the fourth factor, the hearing on the plea withdrawal motion proceeded on the day of sentencing as requested by appellant. Counsel had the opportunity to present his arguments, and the defendant was permitted to make his own arguments concerning plea withdrawal. The record evinces that the trial court gave full and fair consideration to the motion and appellant's statements.

{¶88} It is mainly the last four factors on the above list that are at issue here. The reason for plea withdrawal expressed by counsel in the motion was that appellant was stressed about other charges. This does not provide a strong reason for plea withdrawal in itself but rather could provide state of mind evidence if there were a claim of undue pressure or the like, which there is not.

{¶89} As aforementioned, defense counsel then expressed orally that it is a legitimate strategy to determine whether to seek plea withdrawal based upon whether the defendant is found guilty by a jury on other counts. However, this claim does not weigh in appellant's favor. Plea withdrawal should not be encouraged merely

because a defendant loses on other counts that he supposedly anticipated that he would win.

**{¶90}** Appellant expressed to the trial court that he only pled guilty in the carjacking case because his codefendant was subpoenaed from custody at the Department of Youth Services to testify against him. He believed there was no way to win if this codefendant was testifying. According to appellant, he was seeking plea withdrawal because this incarcerated codefendant later told someone that he would not have testified against appellant had his case gone to trial that day.

**{¶91}** This is a different scenario than that where, for instance, a victim is changing her story. In fact, it is not even the changing of a story; it is merely a claim that a witness would have rejected the deal offered by the state and would have refused to testify. As defense counsel conceded, codefendants who agree to testify against the main defendant often make this claim once they are relieved from having to testify due to the main defendant's plea agreement.

**{¶92}** Moreover, merely because appellant heard that this codefendant had been proclaiming that he would not have gone through with the deal to testify does not mean that this is in fact the truth. And, there is no indication that appellant had a complete defense to the charge. The police found him in the victim's car after a car chase later that day, and the victim was going to testify against appellant in any event.

**{¶93}** The timeliness factor weighs against appellant here as well. The motion was filed eight months after he pled guilty, and he waited until the day before sentencing to file the motion. Timing issues are not erased based upon a desire to wait and see how a jury rules on other charges.

**{¶94}** As for prejudice to the state, the state points out that the 2003 carjacking charges had been pending for over six years when appellant entered his plea. The state was prepared for trial on the morning the plea was entered. They had all of their witnesses and evidence prepared that day. Appellant argues that this is an admission that they are not prejudiced because they were ready then. However, that was eight months prior to the plea withdrawal motion. Memories were

already fading; eight months later, they would be more faded. Unlike some other cases, this was not a matter of weeks.

**{¶95}** In addition, the state told the court at the plea withdrawal hearing that some of their witnesses have moved out of state. The ability to collect the witnesses again after they were relieved of their testifying duties was thus called into question by the prosecutor (who had just received the motion at the hearing). In fact, (according to appellant's own claim) a codefendant, whom the state had transported to testify on the day of the plea, may have since been persuaded out of testifying while incarcerated.

**{¶96}** Rather than weighing in the defendant's favor, this claim may be used by the trial court in favor of the state on the prejudice factor. *See State v. Scott*, 7th Dist. No. 08MA12, 2008-Ohio-54032, ¶ 18 (reluctant witness can establish prejudice); *State v. Johnston*, 7th Dist. No. 06CO64, 2007-Ohio-4620, ¶ 10-12 (prejudice to state can be inferred by facts showing reluctant witness). And, it appears that the codefendant may already have been provided consideration for agreeing to testify at the trial which never ended up occurring due to appellant's plea; if the claim about not testifying in a future trial is true, then the state may suffer prejudice in reworking the codefendant's case as well.

**{¶97}** Furthermore, the motion to withdraw the guilty plea alleged that the state would not be prejudiced because other charges were still pending in this case. However, appellant then entered a plea to one of those charges, and the other two charges were dismissed as part of the plea deal. Plus, two other cases were dismissed. Thus, appellant's own actions the day after filing his plea withdrawal motion eliminated this argument.

**{¶98}** Finally, the trial court and the parties all agreed that sentencing on this indictment should proceed at one hearing. In order to maintain this goal, the sentencing on the aggravated murder, aggravated robbery, receiving stolen property, and escape counts would have to be postponed indefinitely if plea withdrawal were permitted on the three carjacking charges.

{¶99} In any event, prejudice is just one factor, and a lack of prejudice to the state does not automatically allow presentence plea withdrawal. *Leasure*, 7th Dist. No. 01BA42 at ¶ 19. Rather, presentence plea withdrawal is a matter within the trial court's sound discretion. *Xie*, 62 Ohio St.3d at 527. Considering all of the facts and circumstances existing in this case, we cannot conclude that the trial court abused its discretion.

{¶100} The trial court heard appellant's claims at the withdrawal hearing and was in the best position to resolve his good faith and credibility and determine the weight of his assertions in support of his plea withdrawal motion. *See Scott*, 7th Dist. No. 08MA12 at ¶ 26. There are some factors that arguably support appellant's argument for plea withdrawal; however, a reasonable trial court could use its discretion to determine that the weight of the factors tips in favor of denying the request for plea withdrawal. *See id.* Consequently, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER FIVE</u>

{¶101} Appellant's fifth assignment of error provides:

{¶102} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND AN ABUSE OF DISCRETION BY PERMITTING THE INTRODUCTION OF THE TRANSCRIPT OF A WITNESS AT THE TRIAL OF THIS CAUSE IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶103} The state introduced the transcribed testimony of a witness from the first trial of the murder and robbery charges because they could not locate this witness for the trial after remand. (Tr. 425-440). This witness was the cousin of Damon Clark who was in a dating relationship with appellant at the time of the murder. (Tr. 425-426). She testified that Damon Clark and appellant arrived at her house around 1:30 a.m. on December 12, 2003 and slept at her house. (Tr. 427). When they woke up, they asked her if she saw the news. (Tr. 428).

{¶104} This witness was asked if appellant thereafter talked to her about what he did, and she initially said no. When further asked about the statement she gave to police, she then testified that appellant told her that he shot the victim. (Tr. 430-

432, 435, 439). She testified that appellant was worried that Damon Clark "was going to tell on him." (Tr. 431, 435). Appellant also told her that he loved her. (Tr. 435). On cross-examination, defense counsel asked if she received pressure from her family to take Damon Clark's side of the case, and she answered, "Somewhat." (Tr. 437).

{¶105} On appeal, appellant argues that the trial court abused its discretion by permitting the introduction of this prior testimony because there was insufficient evidence that she was unavailable to testify and there was not a similar motive to develop her testimony in the first trial, claiming that the remand altered the trial strategy. This objection was lodged below as well. (Tr. 328-329). Appellant stresses how important it was for the jury to evaluate the demeanor of this witness as she was presenting an admission of appellant and she was pressured to take her cousin's side.

{¶106} Under certain circumstances, former testimony is not excluded by the hearsay rule when the declarant is unavailable as a witness. Evid.R 804(B). A declarant is unavailable if she is absent from the hearing and the proponent of the declarant's statement has been unable to procure her attendance by process or other reasonable means. Evid.R. 804(A)(5). If the state presents their witness's prior testimony from another hearing in the same or a different proceeding, the defendant must have had an opportunity and similar motive to develop the testimony by cross-examination. *See* Evid.R. 804(B)(1). Thus, the prior testimonial statements of the state's witness are subject to the requirements of unavailability and prior opportunity to cross-examine. *See Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶107} We begin with an analysis on unavailability. A witness is not considered unavailable unless the prosecution has made reasonable, good faith efforts to secure the presence of the witness at trial. See *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (abrogated in part on other grounds by *Crawford*); *State v. Keairns*, 9 Ohio St.3d 228, 230, 460 N.E.2d 245 (1984). This court has concluded that where the state subpoenaed a witness's last known

address and used the U.S. Marshal's Service to try to locate the witness, the trial court could properly find that the state made reasonable, good faith efforts to secure the witness at trial. *State v. Oliver*, 7th Dist. No. 07MA169, 2008-Ohio-6371, ¶ 47.

{¶108} On February 17, 2011, the trial court took testimony on this witness's unavailability from an investigator with the prosecutor's office. The investigator had been a trooper and a sergeant with the Ohio State Highway Patrol for over twenty-eight years. (Tr. 323). He stated that he was unable to serve a subpoena on the witness for this trial or the last time a trial was set. (Tr. 324-325).

{¶109} The investigator used LEADS to check the witness's motor vehicle record for a driver's license or vehicle ownership. (Tr. 324-325). He found that she does not have a driver's license but only has a state ID card that was issued in 2007. (Tr. 327). He also learned that she does not own a car. (Tr. 328). The investigator checked the witness's criminal record to discover any recent addresses. (Tr. 328). He checked with the Adult Parole Authority (as she was previously on probation through APA), and he learned that she had completed probation a year before. (Tr. 326). The investigator testified that the Victim-Witness program checked their records and tried to find the witness. (Tr. 327). He asked the sheriff's department if they had served her recently and obtained alternate addresses from the Youngstown Police Department. And, he gathered the old addresses on previous subpoenas. The investigator also performed a general internet search for the witness. (Tr. 325).

{¶110} From all of this information, the investigator then personally traveled to seven or eight addresses in search of this witness. A couple people told him that she previously lived at a particular address, but they no longer knew her whereabouts. He reported that many of the addresses are now vacant houses. (Tr. 325). He concluded that the witness had not been around in the past year. (Tr. 328). The prosecutor added that subpoenas were originally issued for a January 24 trial date and they had thus been looking for the witness for over three weeks. (Tr. 329).

{¶111} Appellant opines that the state should have somehow tracked the witness through her state identification card. This argument would seem to suggest that when a person, whose testimony is sought in court, is carded by a private

business, a computer sends an alert to police so that they can immediately swoop into the store in time to meet the ID card user. Even if this were an available method for finding the general location of a terrorist, for instance, there is no indication that it is a reasonable way to subpoena a witness. "[I]t is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence * * * but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Hardy v. Cross*, 132 S.Ct. 490, 495, 181 L.Ed.2d 468 (2011).

{¶112} Considering all of the efforts placed upon the record, we conclude that the trial court did not abuse its discretion in finding that this witness was unavailable. See *Oliver*, 7th Dist. No. 07MA169 at ¶ 47. The state established that it used reasonable, good faith efforts to secure the witness but was unable to do so. *See id. See also* Evid.R. 804(A)(5) (state must be unable to procure the witness for trial "by process or other reasonable means").

{¶113} We thus move to the second prong of the test for admitting former testimony: whether there was a prior opportunity and a similar motive to cross-examine the witness. Evid.R. 804(B)(1). The defense did cross-examine this witness under oath at the prior trial. The issue is thus mostly whether *the motive* to cross-examine was similar.

{¶114} First, we accentuate that this witness's prior testimony was from appellant's actual jury trial prior to an appellate remand. This works in the state's favor on this topic. *See* 1 Weissenberger, Ohio Evidence, § 804.24 (1995). We also notice that appellant does not specify what questions he would have proposed this time that were not asked at the first trial.

{¶115} Appellant generally urges that the motive to cross-examine was different in the second trial because it contained an additional count: receiving stolen property (the gun used in the murder). However, the testimony of this witness had nothing to do with the murder weapon (unlike other witnesses who testified at the first trial regarding the murder weapon and/or its source). The testimony of the witness at issue was used to support the testimony of others that appellant admitted that he

committed the aggravated murder and the aggravated robbery of the victim on December 11, 2003. We conclude that the motive to cross-examine this witness would have been "similar" if not the same in both trials. *See* Evid.R. 804(B)(1) (similar, not identical, motive).

**{¶116}** Finally, regarding appellant's emphasis on the fact that this witness's testimony was incriminating and the fact that her credibility is important, these facts may be relevant in an analysis of prejudicial versus harmless error. However, under the above analysis, there was no error here. For all of these reasons, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER SIX</u>

**{¶117}** Appellant's sixth assignment of error contends:

**{¶118}** "APPELLANT WAS DENIED DUE PROCESS AND THE LIBERTIES SECURED BY THE [CONSTITUTION] WHEN HE WAS CONVICTED OF THE OFFENSE OF RECEIVING STOLEN PROPERTY UPON INSUFFICIENT EVIDENCE."

**{¶119}** Appellant briefly argues that there was insufficient evidence that he possessed a stolen gun to prove the receiving stolen property count. Specifically, he states that there was no evidence that he was involved in the theft of the security guard's vehicle and thus the gun. Appellant also believes that there was no evidence that the gun allegedly used in the murder was the one stolen from the security guard's vehicle.

**{¶120}** Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998); *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that

circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272–273, 574 N.E.2d 492 (1991).

{¶121} We review the pertinent evidence. An off-duty security guard testified that his 1993 blue Buick LeSabre was stolen from the parking lot of the 541 Club the night before the murder. (Tr. 335-336). The trunk of the car contained his gun belt with a holster, a silver and black .357 magnum, speed loaders, and .38 caliber bullets. (Tr. 334-336). The security guard's vehicle was eventually recovered, but the weapon and its paraphernalia was no longer in the trunk.

{¶122} The security guard returned to the club the next night because the car thieves who stole cars from that neighborhood were known to leave the cars near where they were stolen. That next night, the victim was shot as his vehicle was being stolen from the parking lot of the very same club. Other vehicles in the parking lot also showed signs of attempted theft.

{¶123} Testimony connected appellant with a silver gun, its bullets, a holster, and a gun belt soon after the murder. That is, the murder took place around 10:30 p.m. Near midnight, appellant and Damon Clark went to a friend's house. She testified that appellant was wearing a police-type holster on a belt. (Tr. 297-298). He had a silver revolver. (Tr. 297). He removed empty shells from that gun and placed them into an ashtray; he then emptied the ashtray into the trash and then took the trash out. (Tr. 297-299).

{¶124} Besides seeing a car that fit the description of the murder victim's car in her driveway, she also saw a car that fit the description of the one stolen from the security guard on the street in front of her residence. (Tr. 299-300). (As this assignment of error only relates to the receiving stolen property charge, we need not fully detail her further testimony connecting appellant with the murder or the testimony involving appellant's various admissions that he shot the victim.)

{¶125} As aforementioned, the security guard testified that a .357 magnum takes .38 caliber bullets, which ammunition was stolen along with the gun. (Tr. 335). The BCI agent, who analyzed the slugs found in the victim's body, testified that a .357 magnum is a type of gun that could have fired the bullets that killed the victim.

(Tr. 381). Finally, Gregory Hundley testified that appellant admitted to him in jail that he shot the victim in the back. He believed that appellant told him that he used a .357 magnum for which he had a holster. (Tr. 354-355).

{¶126} Thus, to sum things up, direct evidence was presented that the security guard's black and silver gun, holster, gun belt, and ammunition were stolen within 24 hours of the murder from the same parking lot as the murder. Direct evidence was presented that the gun was stolen by a car thief. The murder victim was shot by appellant while he was stealing the victim's car. The victim was shot by a bullet that fits the security guard's gun. Appellant was seen emptying spent shells from a silver gun shortly after the murder. At the time, he was wearing a police-type holster and a gun belt, not a usual sight (unless you are a police officer *or a security guard*). And, the witness to appellant's gun-emptying saw a car fitting the description of the security guard's car in front of her house and a car fitting the description of the murder victim's car in her driveway. (Tr. 299).

{¶127} As aforementioned, circumstantial evidence has the same probative value as direct evidence. *Jenks*, 61 Ohio St.3d at 272–273. The combination of direct and circumstantial evidence, viewed in the light most favorable to the prosecution, allows some reasonable juror to find that appellant had the stolen gun at some point. *See Goff*, 82 Ohio St.3d at 138; *Smith*, 80 Ohio St.3d at 113. *See also State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 97, ¶ 50 (emphasizing that the test is whether "*any* rational trier-of-fact could have found the essential elements"). Under the unique set of facts existing in this case, we conclude that the state presented sufficient evidence to allow the case to proceed to a jury for their determination as to whether the elements of receiving stolen property were proven beyond a reasonable doubt. This assignment of error is therefore overruled.

ASSIGNMENT OF ERROR NUMBER SEVEN

{¶128} "THE TRIAL COURT ERRED IN PERMITTING TESTIMONY THAT APPELLANT RAN WHEN OFFICER ATTEMPTED TO ARREST HIM AND ERRED IN GIVING A FLIGHT INSTRUCTION [VIOLATING] DUE PROCESS OF LAW UNDER THE [CONSTITUTION]."

**{¶129}** A detective-sergeant testified that he received information concerning appellant's location on January 8, 2004. While officers were watching that location, appellant drove away. (Tr. 384, 387-388). A traffic stop was attempted, but appellant instead opted for a car chase, running two stoplights and a stop sign and then crashing into a fence. Appellant then alighted from the vehicle, jumped the fence, and fled into an industrial park. (Tr. 385). The police found him hiding behind wooden crates at the industrial park. (Tr. 386).

**{¶130}** Appellant entered a continuing objection to this testimony. (Tr. 384-385). In charging the jury, the court included a standard and detailed flight instruction. (Tr. 561-562). Appellant objected to the giving of this instruction. (Tr. 572).

**{¶131}** On appeal, appellant contends that the evidence and the instructions on flight were improper because there was no evidence that he knew the police were looking for him due to the murder/robbery case. He notes that he had multiple cases pending unrelated to the December of 2003 murder/robbery as he had escaped from juvenile detention in October of 2003, which detention arose from the September of 2003 carjacking in Boardman.

**{¶132}** As the state replies, it is "universally conceded" that an accused's flight, his resistance to arrest, acts of concealment, and related conduct are admissible evidence of consciousness of guilt, which is evidence of guilt itself. *State v. Williams*, 79 Ohio St.3d 1, 11, 679 N.E.2d 646 (1997). "[A]dmissibility of evidence of flight does not depend upon how much time passes between the offense and the defendant's flight." *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 169, approving *State v. Alexander*, 8th Dist. No. 51784 (Feb. 26, 1987) (passing of six months between offense and arrest). A jury charge on a topic is reviewed in the context of the entire jury charge. *State v. Price*, 60 Ohio St.2d 136, 141, 398 N.E.2d 772 (1979). And, a trial court's decision to provide a particular jury instruction based upon the facts of the case is not reversed absent an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

**{¶133}** Initially, we respond to appellant's suggestion that he did not know they were coming for him by pointing out that a detective testified that Damon Clark was arrested first. (Tr. 481). This was appellant's friend who was his accomplice in the carjacking and present for the murder. Appellant spent the night with this friend after the incident and spent the next day with him as well. This is the friend who bought and transported the gas to burn the murder victim's vehicle. A reasonable inference can be made that appellant was aware that they would be looking for him next. And, although the passing of time is not dispositive, appellant's flight occurred within a month of the murder.

**{¶134}** The detective-sergeant's testimony provided more than sufficient evidence of flight, resisting arrest, and concealment here. The motive for the various acts of flight was a jury question, not a legal question merely because there happened to exist undisclosed prior offenses. That is, when a particular defendant is so involved in crime that, when he flees from the police, he could be fleeing for any number of past offenses, this does not mean that a flight instruction cannot be provided in the trial for the most extreme offense.

**{¶135}** In fact, if appellant wished to argue that his flight was not due to consciousness of guilt for the murder but was due to other offenses, *he* could have taken the chance and introduced his other criminal acts into evidence. As this strategy had its own risks, he rationally chose not to do so.

**{¶136}** Finally, the trial court informed the jury that they should not consider the flight evidence if they found that another motive prompted the flight or if they were unable to decide what the defendant's motivation was. (Tr. 562). This instruction tempered the instruction that flight and resisting arrest can provide evidence of guilt. *See State v Taylor*, 7th Dist. No. 08MA22, 2010-Ohio 1551, ¶ 27. For all of the foregoing reasons, we conclude that the trial court did not abuse its discretion in providing a flight instruction. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER EIGHT</u>

**{¶137}** Appellant's eighth assignment of error alleges:

{¶138} "APPELLANT WAS DENIED DUE PROCESS, A FAIR TRIAL, AND THE LIBERTIES SECURED BY THE [CONSTITUTION] AS A RESULT OF THE IMPROPER ADMISSION OF IRRELEVANT EVIDENCE AND IMPROPER QUESTIONS AND ARGUMENTS OF THE PROSECUTOR."

{¶139} Appellant complains here that the prosecutor used certain pieces of evidence and made certain statements in closing argument to help convict him by innuendo resulting in prosecutorial misconduct and the admission of evidence that was not relevant in violation of Evid.R. 401 and 402.

{¶140} On review of a claim of prosecutorial misconduct during closing arguments, we first determine whether the remarks were improper. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). If the remarks were improper, we then determine whether the remarks prejudicially affected the defendant's substantial rights. *Id.*

{¶141} In evaluating the propriety of the remarks, we begin with the principle that the prosecution is entitled to significant latitude in its closing remarks. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). The prosecutor may comment on what the evidence has shown and the reasonable inferences that may be drawn from the evidence. *Id.* Thus, the prosecutor may comment upon the testimony of a witness and suggest the conclusions to be drawn therefrom. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 116.

{¶142} Relevant evidence is admissible unless prohibited by another rule, statute, or the constitution. Evid.R. 402. Evidence which is not relevant is not admissible. Evid.R. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶143} The first argument made here is that the evidence and comments concerning Damon Clark's use of the white van should not have been admitted because the van was not shown to have any connection to appellant. However, the testimony was that Damon Clark was appellant's accomplice in carjacking the murder

victim. In fact, appellant was concerned that Clark would turn him in. They were together at a friend's house after the murder, and they both slept at another friend's house that night.

**{¶144}** A white van was parked outside the first friend's house while they were there, and they left the murder victim's car at that residence as well. Appellant asked this friend for a milk carton so they could fill it with gas to burn the murder victim's vehicle. A video shows Clark using the white van while buying gas just before the murder victim's vehicle was found burning close by. A white van was also seen leaving the scene of the car fire. And, there was testimony that appellant admitted to witnesses that he shot someone the night of the murder while with Damon Clark.

**{¶145}** All of this sufficiently connects appellant to the white van and the burning of the murder victim's vehicle. It is background and setting for the offense and its aftermath. It shows disposal of evidence belonging to the murder victim. Someone besides Damon Clark had to assist in driving the two vehicles (the victim's vehicle and the white van) to the scene. As testimony established that appellant admitted he shot someone the night of the murder, a reasonable inference can be drawn about who disposed of that evidence with Clark, especially since appellant obtained the milk carton with the expressed intent of burning the car.

**{¶146}** Consequently, this evidence was not irrelevant and was thus admissible under Evid.R. 401 and 402. Likewise, the prosecutor's reference to this evidence was not improper as the state was entitled to review the evidence presented and outline the reasonable inferences to be drawn therefrom.

**{¶147}** Next, appellant complains about the prosecutor's statement in closing: "the witnesses can't tell you what Damon says because this is not the trial of Damon. This is the trial of Darrin." The defense objected to this statement, and the objection was overruled. (Tr. 541). Appellant argues on appeal that this statement was meant to suggest that Damon Clark had implicated appellant. However, the statement appears more to have been the state's attempt to explain why the witnesses were able to testify about what appellant told them but could not legally testify as to what

anyone else told them. It does not appear to be a suggestion that Clark previously testified against appellant.

**{¶148}** In any event, the contested statement was made in the state's *rebuttal* to the defense's closing argument. In their own closing, the defense made pronouncements such as, "How would she even know about them if Darrin Moore wouldn't have told her? Or Damon Clark told her? Her friend Damon Clark was there, or do we forget about that conveniently? Her friend, Damon Clark, stood there in that house." (Tr. 519). Similarly, the defense continued, "Did either of them ever say that Damon Clark shot or did anything to anybody or even participated in anything? Darrin said. Darrin said." (Tr. 523). As such, the door was opened to the prosecutor's statement. *See State v. Brown*, 38 Ohio St.3d 305, 316-317 (1988). (comments are not prejudicial or erroneous where the defense invited or opened the door to the comments).

**{¶149}** Appellant also takes issue with a statement made by the prosecutor in closing argument regarding the prior testimony that was read into the record. At the time of the murder, appellant was in "somewhat" of a dating relationship with Clark's cousin, whose house they slept at after the murder. In referring to her during closing, the state noted that she was not available, that they could not find her, and that she was uncooperative the last time she testified. (Tr. 507). The defense objected on the grounds that the state was commenting on the absence of a witness. Appellant now argues that there is no evidence that she was uncooperative at the time of her prior testimony.

**{¶150}** However, the transcript of her testimony that was read into the record contains evidence suggesting that she was in fact uncooperative. For instance, when the prosecutor asked her if she ever talked to appellant about what happened that night, she responded, "No, not really." (Tr. 429). The state then elicited that appellant came back to her house a few days later. The state again inquired if he talked to her about what he did at that time. She again responded in the negative. (Tr. 430). The state then resorted to asking her about her statement to the police. She finally agreed that appellant did tell her that he shot the victim. (Tr. 430-431).

**{¶151}** Thus, the state was merely characterizing her two initial negative responses as evidence that she was initially being uncooperative. This is not prosecutorial misconduct. Rather, this is merely an example of the prosecutor recapping the evidence, drawing reasonable inferences from the evidence, and commenting upon those inferences. *See Hand*, 107 Ohio St.3d 378 at ¶ 116; *Lott*, 51 Ohio St.3d at 165. In accordance, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER NINE

**{¶152}** Appellant's ninth assignment of error provides:

**{¶153}** "APPELLANT'S CONVICTIONS AND PRISON SENTENCES VIOLATE THE [CONSTITUTION] AS THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶154}** Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

**{¶155}** A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.* In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶156}** Rather, we defer to the fact-finder who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E. 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 1212 (1967). This is especially true

after a jury trial where the appellate court is discouraged from sitting as "the thirteenth juror" and eliminating a jury verdict. *See Thompkins*, 78 Ohio St.3d at 387. In fact, only a unanimous three-judge panel can reverse a jury verdict on manifest weight grounds. Ohio Constitution, Art. IV, Section 3(B)(3).

{¶157} Appellant urges that the verdict is contrary to the manifest weight of the evidence because there is no eyewitness testimony or physical evidence connecting appellant to the murder and robbery. He contests the credibility of the testimony of the friend who saw appellant disposing of empty shell casings and to whom appellant admitted shooting someone. He notes that Damon Clark's cousin, who also testified that appellant admitted shooting someone, was receiving pressure from her family to testify. He characterizes Mr. Hundley's testimony as incredible as he was a convicted robber with incentive to help the state convict appellant in return for judicial release. Appellant concludes that it is not credible that he would admit that he shot someone to these three people.

{¶158} Here, we have testimony by an off-duty security guard that his car was stolen from the parking lot of 541 Club the night before the murder. (Tr. 335-336). His gun belt with a holster, a silver and black .357 magnum, speed loaders, and .38 caliber bullets were all stolen from the trunk. (Tr. 334-336). When his car was eventually recovered, these items were not likewise recovered.

{¶159} The day after that car theft, Robert Smith was robbed of his car in the same parking lot. During this carjacking, he was shot four times by bullets that fit a .357 magnum. (Tr. 381). A fifth bullet was also recovered from the scene.

{¶160} A friend testified that appellant and Damon Clark stopped at her house near midnight on the night of the murder. She described Clark as nervous and appellant as normal. She asked appellant if he was "up to no good," and he responded, "pow, pow, pow." (Tr. 296, 308, 317). She testified that appellant had a silver revolver and a police-like holster on a gun belt. She also said that she witnessed appellant disposing of empty shell casings from this gun. (Tr. 297-298).

{¶161} On the street in front of her house, she saw a car fitting the description of the car stolen from the security guard. (Tr. 299). In her back driveway, she

noticed a car fitting the description of the murder victim's vehicle. (Tr. 300). Across the street, she saw a van fitting the description of the one used to buy gas and transport it to the scene of the murder victim's burning car. (Tr. 299).

{¶162} After this witness learned about what happened to Mr. Smith, she told appellant and Clark to get the murder victim's car out of her driveway. (Tr. 301-302). He admitted to her that he shot somebody. (Tr. 308). Appellant emphasizes that although the murder occurred on the east side, she testified that "he said they shot some guy on the south side." (Tr. 302). This witness also testified that appellant asked her for a milk carton so they could burn the car. (Tr. 302-303). Evidence established that Damon Clark bought the gas used to burn the murder victim's vehicle and delivered that gas to the scene of the burning car, all while driving a stolen white van. (Tr. 270-272, 477, 479-481).

{¶163} Another witness, Damon Clark's cousin (whom appellant was dating at the time), testified that appellant and Clark came to her house in the early morning hours of December 11, 2003 and slept there. In the morning, they asked her if she saw the news. (Tr. 428). She testified that appellant told her that he shot a man and that he was worried that Clark was going to turn him in. (Tr. 430-431, 435).

{¶164} A fellow inmate testified that appellant admitted that he went out one night to steal a car from a club on the east side and ended up shooting the person whose car he then stole. (Tr. 352). Specifically, this "jailhouse snitch" testified that appellant said the victim put his hands up and appellant "emptied the gun" by shooting the victim in the back. (Tr. 353-354). According to this witness, appellant mentioned that he used a .357, which he put into a holster after the shooting. (Tr. 355). Finally, when the police tried to arrest appellant some weeks later, he started a car chase, crashed into a fence, fled on foot, and then hid from police. (Tr. 384-386, 387-389).

{¶165} In examining the entire record and all reasonable inferences that can be gleaned therefrom, it does not seem that all twelve jurors lost their way in weighing the evidence, assigning the credibility to the witnesses, or resolving the

conflicts in the evidence. *See Thompkins*, 78 Ohio St.3d at 387. A manifest miscarriage of justice is not apparent, nor are exceptional circumstances. *See Id.*

{¶166} The witnesses' stories are not unbelievable, and the inferences drawn were reasonable, even if the opposite inference could have been drawn on some matters as well. *See, e.g., State v. Vondenberg,* 61 Ohio St.2d 285, 289, 401 N.E.2d 437 (1980) ("it is the jury's function to weigh competing inferences, and to accept the one which it finds to be more reasonable"); *Gore*, 131 Ohio App.3d at 201 (where there are two conflicting versions, each one reasonable, we do not choose among them). We thus defer to the jurors who were best able to weigh the evidence and judge the credibility of the witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of those witnesses testifying before it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E. 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 1212 (1967). This assignment of error is overruled.

{¶167} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, J., concurs.